NORTH COAST INDUSTRIES,
Plaintiff–Appellant,

v.

JASON MAXWELL, INC.,
Defendant–Appellee.

No. 91–15142.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 14, 1992.

Decided Aug. 6, 1992.

---

H. Michael Brucker, Steven M. Kipperman Law Corp., Oakland, Cal., for plaintiff-appellant.

Michael Delikat, Baer, Marks & Upham, New York City, and Peter A. Wald, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for defendant-appellee.

Before: SCHROEDER, REINHARDT, and KLEINFELD, Circuit Judges.

SCHROEDER, Circuit Judge:

This is an appeal from an entry of summary judgment in favor of the defendant in a copyright infringement action. The dispute is between two competing manufacturers of women's clothing. Plaintiff-appellant North Coast Industries has a copyright on the design in question. The design is a geometric arrangement of color blocks banded in heavy lines, used by the plaintiff on the front of pullover tops. Plaintiff filed this action for copyright infringement, under 17 U.S.C. § 501 (1988), against the defendant-appellee Jason Maxwell, Inc., after the defendant began selling tops with a very similar geometric design. North Coast's design is designated "Style 7114" and was created by a North Coast designer who was undeniably influenced by the work of the great twentieth century painter Piet Mondrian. In the fashion industry, the work of Mondrian is still principally associated with the French fashion designer Yves St. Laurent who was the first to adapt the type of rectangular block designs used by Mondrian to women's clothing. The "Mondrian look," as it appeared in St. Laurent's dress designs, was widely popular in the 1960's.

█ To establish copyright infringement, the holder of the copyright must prove both valid ownership of the copyright and that there was infringement of that copyright by the alleged infringer, who in this case is the defendant Jason Maxwell. If the plaintiff copyright holder survives the first step, i.e., it establishes that it owns a valid copyright, then the plaintiff must establish infringement by showing both access to its copyrighted material on the part of the alleged infringer and substantial similarity between the copyrighted work and the alleged infringing work. *See generally Sid & Marty Krofft Television v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir.1977).

In this case, the district court ruled that the plaintiff foundered on the first requirement in that the plaintiff had failed to establish that it had a valid copyright. The district court ruled on summary judgment that design 7114 had been copied from the work of Mondrian and St. Laurent because in its view the design contained no non-trivial differences from the masters' work and, more specifically, from a design of St. Laurent that had been featured prominently in a recent fashion magazine display. For ease of understanding, we have reproduced in the appendix a sketch of the St. Laurent design (Sketch A), the North Coast design 7114 (Sketch B), and the allegedly infringing design of Jason Maxwell, Inc., (Sketch C).

█ Our review of the district court's decision must therefore focus on whether design 7114 was copyrightable. Under our copyright law, the registration of the copyright certificate itself establishes a prima facie presumption of the validity of the copyright in a judicial proceeding if, as here, the judicial proceeding is commenced within five years of the copyright's first publication. 17 U.S.C. § 410(c); *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085–86 (9th Cir.1989). However, that presumption may be rebutted by a showing on the part of the defendant that the plaintiff's work is not original. Originality is the indispensable prerequisite for copyrightability. *Kamar Intern., Inc. v. Russ Ber-*

*rie and Co.*, 657 F.2d 1059, 1061 (9th Cir. 1981). The originality requirement, however, does not mean that for valid copyright protection, the copyright must represent something entirely new under the sun. As we explained in *Sid & Marty Krofft Television:*

> The work offered for registration need not be new, but only original, i.e., the product of the registrant. [citations omitted]. As stated in *Alfred Bell & Co. v. Catalda Fine Arts*, 191 F.2d 99, 102–03 (2d Cir.1951):
>
> > "Original" in reference to a copyright work means that the particular work "owes its origin" to the "author." No large measure of novelty is required. * * * All that is needed to satisfy both the Constitution and the statute is that the "author" contributed something more than a "merely trivial" variation, something recognizably "his own." Originality in this context "means little more than a prohibition of actual copying." No matter how poor artistically the "author's" addition, it is enough if it be his own (citations omitted).

562 F.2d 1157, 1163 n. 5 (quotations omitted).

█ The test for substantial similarity is whether the difference between the copyrighted work and the preexisting work is non-trivial. The presumption of validity of copyright registration can be rebutted by a showing on the part of the defendant that the plaintiff's work is not original but copied from another's work. As the district court correctly observed, a defendant may challenge the originality of a plaintiff's design by showing that it is in fact a copy of a preexisting one. The district court was also correct in pointing out that such a showing by the defendant, that the plaintiff's work lacked originality, normally proceeds in the same manner in which a plaintiff proves infringement when the question of defendant's infringement is reached. Thus in order to establish that the plaintiff copied a preexisting work, a defendant must show that plaintiff had access to the prior work and that plaintiff's work is substantially similar to the prior work in both

ideas and expression. As Professor Nimmer has stated, "[p]roof that the plaintiff copied from prior works should involve the same elements ... as are required to establish copying by the defendant from the plaintiff, i.e., access and similarity." 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.11[B] n. 50 (1991).

■ In this case, the defendant seeks to show that the plaintiff copied design 7114 from the work of Mondrian and St. Laurent. There is no question that the plaintiff had access to such work. Plaintiff's designer admittedly studied Mondrian, and no knowledgable person in the fashion industry is unaware of the work of St. Laurent, whose Mondrian inspired work was showcased in a recent industry publication. Our inquiry, therefore, must focus on whether the district court properly determined, as a matter of law, that design 7114 was substantially similar to the preexisting work, i.e., whether the district court properly determined on summary judgment that the creative differences between design 7114 and the preexisting Mondrian–St. Laurent work were trivial. We conclude that the district court erred and that the question is one of fact for the jury.

The seminal case in our circuit on substantial similarity for copyright purposes in the world of art and entertainment is *Sid & Marty Krofft Television v. McDonald's Corp.*, 562 F.2d 1157 (1977). This court there grappled with the long-standing problem of how to reward creativity without inhibiting the free use of the ideas that are the building blocks of creativity. We sought to give some practical meaning to the "axiom of copyright law that the protection granted to a copyrighted work extends only to the particular expression of the idea and never to the idea itself." *Id.* at 1163 (citing *Mazer v. Stein*, 347 U.S. 201, 217–18, 74 S.Ct. 460, 470–71, 98 L.Ed. 630 (1954); *Baker v. Selden*, 101 U.S. 99, 102–03, 25 L.Ed. 841 (1879)).

In *Krofft* we separated the issue of similarity of general ideas from the issue of similarity of expression by applying a separate test for each. The test for similarity of general ideas, which we termed the "ex-

trinsic test," is generally a question of law for the court because it turns "not on the responses of the trier of fact, but on specific criteria which can be listed and analyzed." *Id.* at 1164. If idea similarity is found, then the trier-of-fact must decide "whether there is substantial similarity in the expressions of the ideas so as to constitute infringement." *Id.* This we labeled in *Krofft* as the "intrinsic test" because it depends "on the response of the ordinary reasonable person." *Id.* While on its face, the "intrinsic test" as to expression appears to preclude an entry of summary judgment, this court has not hesitated in granting summary judgment where no reasonable trier-of-fact could find substantial similarity. *Berkic v. Crichton*, 761 F.2d 1289 (9th Cir.), *cert. denied*, 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed.2d 69 (1985); *Litchfield v. Spielberg*, 736 F.2d 1352 (9th Cir. 1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985); *See v. Durang*, 711 F.2d 141 (9th Cir.1983). Likewise, summary judgment has been granted where no reasonable trier-of-fact could find even trivial differences in the designs as, for example, where reproductions are involved. *See Durham Industries v. Tomy Corporation*, 630 F.2d 905 (2d Cir.1980).

In this case, we are presented with a design of rectangular shapes that is similar to but not identical to the St. Laurent design inspired by Mondrian. The district court concluded that the only variations that distinguished design 7114 from the St. Laurent design, were the location of the vertical band and the proportion of the rectangular shapes. In the court's mind, these variations were "trivial in their impact upon the idea represented by this design," and thus were not entitled to copyright protection. The district court did not focus on the critical distinction between the idea and expression of the idea that is so fundamental to our copyright law. While the "idea" of using bounded geometric figures in a pattern is clearly one which the plaintiff borrowed, it is by no means clear that the "expressions" of that idea, in the configurations of geometric figures in the St. Laurent's design and design 7114 (figures A & B), are substantially similar and

the differences merely trivial. Mondrian's own claim to fame comes from his use of such geometric shapes in a uniquely characteristic style. Mondrian "developed a distinctive style of nonobjective painting based on the reduction of pictorial elements to vertical and horizontal lines, using the three primary colours and non-colours. His work has exerted a powerful influence on 20th–century art, including architecture, advertising art, and topography." 12 *Encyclopaedia Britannica* 343 (15th ed.) (1982).[1] If we were to accept the view that, as a matter of law the differences in the placement of geometric shapes should be regarded as trivial, we would be forced to conclude that Mondrian's creativity with geometric shapes ended with his first painting, and that he went on to paint the same painting a thousand times. This is not the judgment of art history, and it cannot be the correct judgment of a court as a matter of law. The plaintiff was entitled to have the validity of its copyright determined by a trier-of-fact.

REVERSED AND REMANDED.

---

[1]. Mondrian developed an entirely non-representational style.... [H]e restricts his design to horizontals and verticals and his colors to the three primary hues, plus black and white. Every possibility of representation is thereby eliminated.... He was interested solely in relationships and wanted no distracting elements or fortuitous associations.... Strange as it may seem, Mondrian's exquisite sense for nonsymmetrical balance is so specific that critics well acquainted with his work have no difficulty in distinguishing fakes from genuine pictures.
Horst W. Janson, History of Art 729–730 (1991) (revised and expanded by Anthony F. Janson).

## APPENDIX

### SKETCH A

Yves St. Laurent's rendition of Mondrian's painting, commonly seen on women's dresses.

**SKETCH B**

Geometric design produced and copyrighted by
North Coast Industries.

1038

## SKETCH C

Allegedly infringing design
produced by Jason Maxwell.