**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

O'WELL NOVELTY COMPANY,
LIMITED, A Taiwan Corporation,
Plaintiff-Appellant,

v.

No. 99-1949

OFFENBACHER, INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(CA-97-2095-DKC)

Argued: June 7, 2000

Decided: August 1, 2000

Before WIDENER, WILKINS, and WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Surjit Paul Singh Soni, THE SONI LAW FIRM, Pasa-
dena, California, for Appellant. Charles Lester Simmons, Jr., GOR-
MAN & WILLIAMS, Baltimore, Maryland, for Appellee. **ON
BRIEF:** M. Danton Richardson, Leo E. Lundberg, Jr., THE SONI
LAW FIRM, Pasadena, California, for Appellant. Francis L. Gorman,
GORMAN & WILLIAMS, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

O'Well Novelty Company, Ltd. sued Offenbacher, Inc. in the United States District Court for the District of Maryland, alleging that Offenbacher infringed O'Well's copyright, in violation of the Copyright Act of 1976, by importing and selling copies of miniature lighted porcelain houses from O'Well's 1996 copyrighted collection without O'Well's authority. After a seven-day trial, the jury returned a verdict for Offenbacher, finding, among other things, that O'Well had failed to prove by a preponderance of the evidence that (1) the 1996 collection of porcelain houses was an original creative work, (2) the individual houses were copyrightable, and (3) Offenbacher had infringed O'Well's copyright. The jury also found that Offenbacher had proven by a preponderance of the evidence that O'Well had knowingly failed to advise the Copyright Office of facts that might have led to a rejection of O'Well's copyright application. The district court accordingly entered judgment for Offenbacher. The court subsequently denied O'Well's post-trial motion for judgment as a matter of law, for a new trial, or to alter or amend judgment, and awarded Offenbacher attorneys' fees and costs. O'Well noted a timely appeal of these rulings. Finding no reversible error, we affirm.

I.

Viewed in the light most favorable to Offenbacher, the prevailing party, see Harris v. L & L Wings, Inc., 132 F.3d 978, 980 (4th Cir. 1997), the evidence adduced at trial is as follows. O'Well is a Taiwanese corporation in the business of creating, producing, distributing, and marketing miniature porcelain lighted houses. O'Well's porcelain houses were created by independent sculptors in Taiwan working out of their own studios. The sculptors based their designs upon photographs of houses supplied by O'Well from books, magazines, and catalogs. The extent to which the sculptors copied the pho-

2

tographs in designing the houses is a point of dispute in this case. Once a sculptor finished a clay model of a house, O'Well supplied the completed model to Chiu Yi Industrial Art Company, Ltd., a Chinese corporation, which would create a mold from the model for production.

In April 1996, O'Well applied for a copyright registration in its porcelain houses, apparently seeking a copyright for its entire collection of houses created between 1992 and 1996 (the 1996 Collection). O'Well completed its application for a certificate of registration on a Form TX and submitted with the application its catalog of houses. On the application, O'Well indicated that it sought copyright in the "[e]ntire text and photographs." (App. of Exs. Vol. I No. 1.) The application did not indicate that the work was a "collective" work or that the porcelain houses were derivative in nature. The registration for this copyright became effective on April 23, 1996. In February 1997, O'Well filed a corrective application that indicated that O'Well sought a copyright in the sculptures of the houses as well as the text and photographs in the catalog. The amended registration became effective on March 10, 1997.

Offenbacher is a Maryland retailer that sells miniature porcelain lighted houses during the Christmas season. Offenbacher is a member of the Marathon Buying Group, a group of four American retailers who combine their purchase orders from Asia in order to obtain volume discounts. In 1994 and 1995, Offenbacher, acting as a member of the Marathon Buying Group, purchased porcelain houses from O'Well. In both years, O'Well's deliveries to Offenbacher were late. Moreover, in 1995, some of O'Well's deliveries to Offenbacher contained the incorrect model houses. Accordingly, in 1996, Offenbacher and the rest of the Marathon Buying Group purchased their porcelain houses from a different Taiwanese corporation, Taiwan Novelty. Taiwan Novelty purchased its houses from Chiu Yi, which made some of the houses for Taiwan Novelty in 1996 from the same molds it had used to make O'Well's houses in 1994 and 1995.

O'Well subsequently filed suit against Offenbacher in district court alleging that Offenbacher infringed O'Well's copyright in the 1996 Collection, in violation of the Copyright Act of 1976, by selling the porcelain houses purchased from Taiwan Novelty. On cross-motions

for summary judgment, the district court granted partial summary judgment to Offenbacher, finding that O'Well was barred from recovering attorneys' fees under section 412 of the Copyright Act because the alleged infringement predated the effective date of O'Well's copyright registration in the sculptures. O'Well filed an amended complaint and the case proceeded to trial. After a seven-day jury trial, the jury returned a verdict in favor of Offenbacher. As reflected on its verdict sheet, the jury found, among other things, that O'Well had failed to prove by a preponderance of the evidence that (1) the 1996 collection of porcelain houses was an original creative work, (2) the individual houses were copyrightable, and (3) Offenbacher had infringed O'Well's copyright. The jury also found that Offenbacher had proven by a preponderance of the evidence that O'Well had knowingly failed to advise the Copyright Office of facts that might have led to a rejection of O'Well's copyright application. By order of February 18, 1999, the district court entered final judgment in favor of Offenbacher.

Offenbacher subsequently filed a motion for an award of attorneys' fees as a prevailing party pursuant to section 505 of the Copyright Act. O'Well filed a post-trial motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b); for a new trial pursuant to Federal Rule of Civil Procedure 59(a); or to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e). In its motion, O'Well argued, among other things, that judgment as a matter of law or a new trial was warranted because the jury's findings were not supported by the evidence and that a new trial was warranted because the court erred in its instructions to the jury on the first sale doctrine and on co-ownership. By memorandum opinion and order of June 4, 1999, the district court denied O'Well's post-trial motion and granted in part and denied in part Offenbacher's motion for attorneys' fees. O'Well filed a timely notice of appeal from both the district court's order entering final judgment in favor of Offenbacher and the district court's order denying O'Well's post-trial motion and granting Offenbacher attorneys' fees.

II.

On appeal, O'Well sets forth several contentions of error. First, O'Well contends, the district court erred in denying O'Well's post-

trial motion for judgment as a matter of law or a new trial because the jury's verdict was not supported by the evidence and the jury was not properly instructed on the applicable law. Second, O'Well asserts, the district court erred in failing to amend the judgment to avoid manifest injustice. Finally, O'Well argues, the district court erred in awarding attorneys' fees to Offenbacher as a prevailing party under the Copyright Act because such an award is prohibited by section 412 of the Copyright Act, and, alternatively, an award is not warranted under the circumstances of this case. We address these arguments in turn.

A.

First, O'Well argues that the district court erred in denying its post-trial motion for judgment as a matter of law or a new trial because the jury's verdict was not supported by the evidence and the jury was not properly instructed on the applicable law. We review a district court's denial of a Rule 50 motion for judgment as a matter of law de novo, viewing the evidence in the light most favorable to the non-movants. See Chaudhry v. Gallerizzo, 174 F.3d 394, 404-05 (4th Cir.), cert. denied, 120 S. Ct. 215 (1999). We review a district court's denial of a Rule 59 motion for a new trial for abuse of discretion. See Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998). Applying these standards of review, "[t]he verdict is permitted to stand unless, under Rule 50(b), no substantial evidence is presented to support the award, or, under Rule 59, the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice." Mattison v. Dallas Carrier Corp., 947 F.2d 95, 100 (4th Cir. 1991) (internal citation and quotation marks omitted).

1.

O'Well challenges the district court's denial of its post-trial motion for judgment as a matter of law or a new trial based upon the jury's verdict. In particular, O'Well argues that the evidence presented at trial was insufficient to support the jury's findings that the 1996 Collection was not an original creative work, that none of the works underlying the 1996 Collection was an original creative work, that O'Well knowingly failed to advise the Copyright Office of facts that

5

might have occasioned a rejection of O'Well's copyright, that O'Well was not the owner of the copyright in any of the works underlying the 1996 Collection, that Chiu Yi was authorized to produce and sell the houses in 1996, that Offenbacher had not infringed O'Well's copyright in the 1996 Collection, and that Offenbacher had not infringed O'Well's copyright in any of the works underlying the 1996 Collection.

The Copyright Act of 1976 grants copyright protection to "original works of authorship fixed in any tangible medium of expression," including "sculptural works." 17 U.S.C.A.§ 102(a) (West 1996). To establish a claim of copyright infringement, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). A certificate of copyright registration made before or within five years of the first publication of the work constitutes prima facie evidence of a copyright's validity. See 17 U.S.C.A. § 410(c) (West 1996). A defendant may rebut the presumption of a copyright's validity by showing that the work was not original or that the copyright registration was invalid. See Fonar Corp. v. Domenick, 105 F.3d 99, 104-05 (2d Cir. 1997).

In returning a verdict for Offenbacher, the jury found, among other things, that neither the 1996 Collection nor the underlying works were original creative works that were copyrightable. As the Supreme Court has observed, "[t]o qualify for copyright protection, a work must be original to the author." Feist, 499 U.S. at 345. "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." Id. Because a "slight amount" of creativity suffices to satisfy the originality requirement, "the vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." Id. (internal quotation marks omitted). A collective work qualifies as original if "the author make[s] the selection or arrangement independently (i.e., without copying that selection or arrangement from another work)" and the selection or arrangement "display[s] some minimal level of creativity." Id. at 358.

O'Well argues that the evidence presented was insufficient to support the jury's finding that the 1996 Collection was not an original

creative work because the evidence showed that O'Well selected 212 houses in particular for inclusion in the 1996 Collection and excluded many others. We disagree. At trial, the following colloquy took place between Offenbacher's counsel and Davis Chiu, one of O'Well's principals:

> Q. Does this collection include every house that O'Well has ever created?
>
> . . . .
>
> A. That means before 1996?
>
> Q. Yes.
>
> A. Before 1996, right?
>
> . . . .
>
> A. Yes. This is it from '92, '93, '94, '95, '96.
>
> Q. Does it -- are there houses that were created in 1992 through 1996 that are not in this collection?
>
> A. No.

(J.A. at 1081-82.) O'Well contends that Chiu's testimony cannot be interpreted as stating that O'Well automatically included every house it made between 1992 and 1996 in the 1996 Collection because Chiu qualified his answer immediately thereafter by stating "[t]hat means almost -- yeah" and subsequently testified that he could not remember the particular model number of a house he was shown because "until now there are over 450 style [sic] we design." (J.A. at 1082, 1083.) The jury reasonably could have interpreted Chiu's testimony that O'Well designed 450 different styles of houses to refer to the number designed up until the time of Chiu's testimony. The jury also reasonably could have given little credence to Chiu's qualification of "almost" in light of his unequivocal testimony-- repeated, no less -- that all of O'Well's houses created between 1992 and 1996 were

7

included in the 1996 Collection. The fact that Offenbacher did not introduce evidence of any prior collection that O'Well copied in creating the 1996 Collection is irrelevant because the jury reasonably could have concluded that O'Well's selection of houses to include in the 1996 Collection was a purely ministerial act devoid of any independent judgment. We, therefore, conclude that the jury's finding that the 1996 Collection was not an original creative work was sufficiently supported by the evidence.

O'Well also argues that the evidence presented was insufficient to support the jury's finding that the underlying works were not original creative works because the evidence indicated significant variations between the source material and the finished product. We disagree. The jury was presented with a house from another manufacturer, Department 56, as well as the source material relied upon by O'Well's sculptors, and concluded that O'Well's houses were not original creative works. Although we recognize that the quantum of creativity required to satisfy the originality requirement is fairly low, we decline to second-guess a jury's finding on a subject uniquely within the jury's ken. See North Coast Indus. v. Jason Maxwell, Inc., 972 F.2d 1031, 1034-35 (9th Cir. 1992) (concluding that question of whether plaintiff's work was original or was substantially similar to preexisting work was a question for the jury). We, therefore, conclude that the jury's finding that the underlying works were not original creative works was sufficiently supported by the evidence.

In sum, we hold that the jury's findings that neither the 1996 Collection nor the underlying works were original creative works were sufficiently supported by the evidence. Because these findings rebut O'Well's claim to a valid copyright in the 1996 Collection and the underlying works, and, thus, provide sufficient support for the jury's verdict in favor of Offenbacher, we need not discuss the rest of O'Well's contentions of error regarding the jury's verdict. We, therefore, affirm the district court's denial of O'Well's post-trial motion for judgment as a matter of law or a new trial based upon O'Well's challenge to the jury's verdict.

2.

O'Well also challenges the district court's denial of its post-trial motion for a new trial based upon the court's instructions to the jury

8

on originality, burdens of proof, authorship, joint ownership, the first sale doctrine, infringement, and invalidity. A court is not "required to accept all the suggested instructions offered by the parties." Hardin v. Ski Venture, Inc., 50 F.3d 1291, 1294 (4th Cir. 1995). Rather, "[t]he test of the adequacy of jury instructions is whether the jury charge, construed as a whole, adequately states the controlling legal principle without misleading or confusing the jury." Chaudhry, 174 F.3d at 408. "A set of legally accurate instructions that does not effectively direct a verdict for one side or the other is generally adequate." Hardin, 50 F.3d at 1294. Moreover, "[e]ven when jury instructions are flawed, there can be no reversal unless the error seriously prejudiced the plaintiff's case." Id. at 1296.

We first address whether the district court erred in its instructions on originality, because if we conclude that those instructions were adequate, we need not proceed further given our conclusion above regarding the jury's findings on originality. O'Well challenges the district court's instruction that "[e]ach of the separate works in the collective work must itself be copyrightable" and the court's instruction that a derivative work must be a "substantial variation from any preexisting work" in order to be original.[1] (J.A. at 1734, 1737.) As an

_____

[1] The district court gave the jury the following instructions on originality:

> Plaintiff's claim in this case is that it is the owner of a collective work protected by the Copyright Act. A collective work is a work, such as a periodical issue, anthology or encyclopedia, in which a number of contributions constituting separate and independent works in themselves are assembled into a collective whole. Each of the separate works in the collective work must itself be copyrightable.

> To create a collective work, the author selects the preexisting materials in such a way that the resulting whole constitutes an original and creative work of authorship. Original means that the compiler independently made his selection and did not copy from others. Creative means that the selection is more than typical, mechanical or routine and is not so obvious or commonplace as to be expected or inevitable.

> . . . .

9

initial matter, Offenbacher contends that O'Well failed properly to preserve its objections to the district court's instructions on originality, and, therefore, any error in these instructions does not mandate reversal absent plain error. Federal Rule of Civil Procedure 51 provides that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, <u>stating distinctly</u> the matter objected to and the grounds of the objection." Fed. R. Civ. P. 51 (emphasis added). "Rule 51 must be read in conjunction with Rule 46," <u>City of Richmond v. Madison Management Group, Inc.</u>, 918 F.2d 438, 453 (4th Cir. 1990), however, which provides in relevant part that "it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which the party desires the court to take or the party's objection to the action of the court and the grounds thereof," Fed. R. Civ. P. 46. In other words, "where the district court was fully aware of the plaintiff's position, and the district court had obviously considered and rejected that position, strict enforcement of Rule 51 would exalt form over substance." <u>City of Richmond</u>, 918 F.2d at 453 (internal quotation marks omitted).

O'Well repeatedly objected to the district court's jury instruction that a copyrightable collective work required that the separate individual works be copyrightable. Accordingly, O'Well properly preserved

_____

> . . . Under the copyright law, originality means that the work was independently created by the author. The fundamental prerequisite for copyright protection is that the work be the original product of the person or entity claiming copyright.
>
> A derivative work is a work based upon one or more preexisting works. The copyright in a derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material in creating the work. To support a copyright, there must be at least some substantial variation from any preexisting work, not merely a trivial variation such as might occur in translation to a different medium. The author of a derivative work does not acquire an exclusive right to or in the preexisting material merely by authoring the derivative work.

(J.A. at 1734-35, 1736-37.)

10

that challenge for appeal. Our review of the record reveals, however, that O'Well failed specifically to object to the portion of Offenbacher's proposed instruction on originality stating that "[t]o support a copyright, there must be at least some substantial variation, not merely a trivial variation such as might occur in translation to a different medium," (Attach. to Appellant's Reply Br.), and failed to object to similar language in the district court's jury instruction on originality. Accordingly, we review this challenge only for plain error, see Rice v. Community Health Ass'n, 203 F.3d 283, 286 (4th Cir. 2000), and will overlook O'Well's failure to object at the proper time "only if exceptional circumstances exist such as when the error is so obvious or so serious that the public reputation and integrity of the judicial proceedings is impaired," Hafner v. Brown, 983 F.2d 570, 578 (4th Cir. 1992) (internal quotation marks omitted).

Neither of O'Well's challenges to the district court's jury instructions on originality possesses any merit. First, the district court's instruction to the jury that "[e]ach of the separate works in the collective work must itself be copyrightable" is a correct statement of the law. See 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 3.02, at 3-6 (2000) ("Those compilations that consist of contributions that themselves constitute `works' capable of copyright are called collective works." (footnotes omitted)). The case law relied upon by O'Well for the proposition that the underlying components of a work need not be copyrightable in order for the work itself to be copyrightable is distinguishable in that it concerns compilations that are not collective works.**2** See Educational Testing Servs. v. Katzman, 793 F.2d 533, 538 (3d Cir. 1986). Second, the district court defined "substantial variation" as "not merely a trivial variation" in its instruction to the jury on originality. (J.A. at 1737.) Seen in this light, the

_____

**2** The Copyright Act defines a "collective work" as "a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." 17 U.S.C.A. § 101 (West Supp. 2000). The Copyright Act defines a "compilation" as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." Id. "The term `compilation' includes collective works." Id.

11

district court's instruction on originality is fully consistent with the Supreme Court's definition of originality in <u>Feist</u>, and, at the very least, does not constitute plain error warranting a new trial.

In sum, we hold that the district court's instructions to the jury on originality, taken as a whole, adequately stated the controlling legal principles. Having already concluded that the jury's findings that neither the 1996 Collection nor the underlying works were original creative works were sufficiently supported by the evidence, <u>see supra</u> Part II.A.1, our conclusion that the district court's instructions on originality were adequate means that we need not discuss the rest of O'Well's challenges to the jury instructions because any error in those instructions could not have seriously prejudiced O'Well's case. We, therefore, affirm the district court's denial of O'Well's post-trial motion for a new trial based upon the jury instructions.**3**

B.

Second, O'Well argues that the district court erred in denying its motion to alter or amend judgment pursuant to Rule 59(e). Specifically, O'Well contends that Rule 59(e) relief was warranted because the judgment entered by the district court on February 18, 1999 was

_____

**3** We also reject O'Well's argument, advanced in its post-trial motion and hidden away in the section of its appellate brief on the standard of review for jury instructions, that a new trial is warranted because the verdict was "logically incompatible," as evidenced by the jury's responses to Verdict Interrogatories II.B and II.C. Verdict Interrogatory II.B, which the jury answered in the negative, asked whether O'Well had proven by the preponderance of the evidence that it was the owner of the rights to copyright the houses. Verdict Interrogatory II.C, which the jury answered in the affirmative, asked whether Offenbacher had proven by the preponderance of the evidence that Chiu Yi was authorized to produce and sell the houses in 1996. Because the verdict sheet did not instruct the jury to refrain from answering an interrogatory if it gave a particular answer to a prior interrogatory, it is entirely plausible that the jury found that O'Well had failed to prove by a preponderance of the evidence that it was the owner of rights to copyright the houses, and, in the alternative, that even if O'Well was the owner of such rights, Offenbacher had proven by a preponderance of the evidence that Chiu Yi was authorized to produce and sell the houses.

12

riddled with clear errors of law that would "wreak manifest injustice" on O'Well and similarly situated copyright holders if allowed to stand. (Appellant's Br. at 58.) We review a district court's denial of a Rule 59(e) motion for abuse of discretion, see Pacific Ins. Co. v. American Nat'l Fire Ins. Co., 148 F.3d 396, 402 (4th Cir. 1998), keeping in mind that "[i]n general reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly," id. at 403 (internal quotation marks omitted). In light of our disposition of O'Well's preceding arguments on appeal, we have no difficulty concluding that the district court did not abuse its discretion in denying O'Well's Rule 59(e) motion to alter or amend judgment.

C.

Finally, O'Well argues that the district court erred in awarding attorneys' fees to Offenbacher as a prevailing party under the Copyright Act because the district court's denial of O'Well's claim for attorneys' fees also bars Offenbacher's claim for attorneys' fees under the Copyright Act. In the alternative, O'Well argues that the district court's award of attorneys' fees to Offenbacher was unwarranted under the circumstances of this case because O'Well did not pursue this litigation in less than good faith, and O'Well advanced legal and factual positions that were appropriate under copyright law and consistent with the evidence presented at trial.

The Copyright Act provides that a district court may in its discretion award costs and "may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C.A. § 505 (West 1996). The Supreme Court has interpreted § 505 as providing discretion to a district court to award attorneys' fees to a prevailing party, see Fogerty v. Fantasy, Inc., 510 U.S. 517, 533-34 (1994), and has confirmed that "[p]revailing plaintiffs and prevailing defendants are to be treated alike," id. at 534. In determining whether to award attorneys' fees to a prevailing party under § 505, a district court should consider the following factors: "(1) the motivation of the parties, (2) the objective reasonableness of the legal and factual positions advanced, (3) the need in particular circumstances to advance considerations of compensation and deterrence, and (4) any other relevant factor presented." Diamond Star Bldg. Corp. v. Freed, 30 F.3d 503, 505 (4th Cir. 1996) (internal quotation marks omitted). We review a

13

district court's grant of attorneys' fees under § 505 for abuse of discretion and any factual findings underlying its ruling for clear error. See id. at 506.

As an initial matter, O'Well contends that the district court was prohibited as a matter of law from awarding attorneys' fees to Offenbacher. In support of this argument, O'Well cites the aforementioned holding in Fogerty that "[p]revailing plaintiffs and prevailing defendants are to be treated alike." From this holding, and the district court's pre-trial ruling that O'Well was barred by section 412 of the Copyright Act from receiving attorneys' fees because the alleged infringement predated the effective date of O'Well's copyright, O'Well leaps to the conclusion that Offenbacher also is barred from receiving attorneys' fees. We do not find this novel assertion to be persuasive. Viewed in its proper context, the holding from Fogerty cited by O'Well merely indicates that § 505 empowers a district court to award attorneys' fees to a prevailing defendant as well as to a prevailing plaintiff. Moreover, by its plain language, § 412 only applies to plaintiffs who assert copyright infringement claims and not to defendants who successfully defend against such claims.[4] Finally, it simply defies logic to conclude that an unsuccessful plaintiff's additional failure timely to register its copyright serves to bar a court from awarding attorneys' fees to the prevailing defendant. We, therefore, reject O'Well's argument that the district court's denial of attorneys' fees to O'Well also bars an award of attorneys' fees to Offenbacher.

_____

[4] Section 412 of the Copyright Act provides:

> In any action under this title, other than an action brought for a violation of the rights of the author under section 106A(a) or an action instituted under section 411(b), no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for--
>
> (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
>
> (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

35 12 17 U.S.C.A. § 412 (West 1996) (emphasis added).

14

Alternatively, O'Well contends that the district court abused its discretion in awarding attorneys' fees to Offenbacher under the four-factor test set forth in Diamond Star. With regard to the first factor, the motivation of the parties, the district court concluded that Offenbacher was properly motivated to defend the lawsuit brought by O'Well and that O'Well had taken a position in the case inconsistent with a position in a separate case. With regard to the second factor, the reasonableness of the legal and factual positions advanced, the district court concluded that Offenbacher's legal and factual positions advanced throughout the litigation were reasonable whereas O'Well advanced several positions that were unreasonable, including positions on discovery issues and its belated assertion that it was seeking to enforce a copyright protection in its collection of houses. With regard to the third factor, compensation and deterrence, the district court noted that O'Well was involved in a number of copyright suits against retailers based upon sales of the porcelain houses and that an award of attorneys' fees and costs would deter future lawsuits based upon its registration of the 1996 Collection. Finally, with regard to other factors, the district court noted that Offenbacher was victorious on every claim in the lawsuit as well as most of the discovery and evidentiary issues raised before and after trial. Because all four factors favored an award of attorneys' fees, and the district court's factual findings underlying its analysis were not clearly erroneous, we conclude that the district court did not abuse its discretion in awarding attorneys' fees to Offenbacher as a prevailing party.

III.

In sum, we hold that the district court did not commit reversible error in denying O'Well's post-trial motion for judgment as a matter of law or a new trial challenging the jury's verdict and the district court's instructions to the jury on the applicable law, in denying O'Well's post-trial motion to alter or amend judgment, or in awarding attorneys' fees to Offenbacher as a prevailing party under the Copyright Act. We, therefore, affirm the district court's rulings.

AFFIRMED

15