**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DIRECT TECHNOLOGIES, LLC,
a California limited liability
company,
*Plaintiff-Appellant*,

v.

ELECTRONIC ARTS, INC., a
Delaware corporation,
*Defendant-Appellee.*

Nos. 14-56266
14-56745

D.C. No.
8:10-cv-01336-AG-PJW

OPINION

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Argued and Submitted June 8, 2016
Pasadena, California

Filed September 6, 2016

Before: Alex Kozinski, Ronald M. Gould,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Gould

## SUMMARY[*]

### Copyright / Trade Secrets

The panel affirmed in part and reversed in part the district court's summary judgment in favor of defendant Electronic Arts, Inc., in a copyright infringement and trade secrets case.

Electronic Arts, maker of The Sims, a computer game, contracted with a production company to produce a USB flash drive shaped like a "PlumbBob," a gem-shaped icon from the game. That company contracted with Direct Technologies, LLC, to produce a prototype. Electronic Arts approved the prototype but had the flash drives produced by a company in China. Direct Technologies sued under the Copyright Act and the California Uniform Trade Secrets Act.

Reversing as to the copyright infringement claim, the panel held that the district court erred in ruling as a matter of law that the flash drive was not sufficiently original when compared to the PlumbBob icon to qualify for copyright protection as a derivative work. The panel held that there was a genuine issue of material fact as to whether Direct Technologies' cut-away design for removing the flash drive from the PlumbBob object was sufficiently non-functional and non-trivial to warrant copyright protection. There was also a genuine issue of material fact as to whether Direct Technologies was sufficiently in control of its artistic contribution to qualify as a joint author in the flash drive prototype.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Affirming as to the trade secrets claim, although relying on different grounds than the district court, the panel held that Direct Technologies' contribution to the PlumbBob USB drive, a design for the flash drive's removal from the PlumbBob object, did not derive independent economic value from not being generally known to the public. The panel also held that the district court did not clearly err or otherwise abuse its discretion in denying Electronic Arts attorneys' fees for the trade secrets claim.

**COUNSEL**

John Tehranian (argued), Christopher W. Arledge, and Peter R. Afrasiabi, One LLP, Newport Beach, California, for Plaintiff-Appellant.

Robert N. Klieger (argued), Hueston Hennigan LLP, Los Angeles, California, for Defendant-Appellee.

**OPINION**

GOULD, Circuit Judge:

Electronic Arts (EA) is the creator of The Sims, a popular computer game. EA contracted with a production company called Lithomania to produce a USB flash drive shaped like a "PlumbBob," a gem-shaped icon from the computer game, to promote a "Collector's Edition" of The Sims. Lithomania in turn contracted with Direct Technologies (DT) to produce a prototype of the PlumbBob-shaped flash drive. EA approved the prototype, but DT's prototype was shipped to a

company in China to make essentially the same flash drives for $0.50 cheaper per unit than DT proposed.

After DT settled breach of contract claims with Lithomania, DT sued EA under the federal Copyright Act and the California Uniform Trade Secrets Act (CUTSA). The district court granted summary judgment to EA. The district court held that the flash drive was not sufficiently "original" when compared to the PlumbBob icon to qualify for copyright protection. The court also held that DT had not taken "reasonable efforts" to keep the flash drive design secret because DT had voluntarily given the prototype to Lithomania without explicit confidentiality restrictions. EA then moved for attorneys' fees under each statute, but the district court denied fees on both claims, concluding that DT's claims were neither objectively specious nor brought in bad faith.

With regard to the copyright claim, we hold that the district court erred by concluding as a matter of law that the flash drive was not copyrightable. There is a genuine issue of material fact as to whether DT's cut-away design for removing the USB flash drive from the PlumbBob object is sufficiently non-functional and non-trivial to warrant copyright protection. A reasonable jury could decide these questions in either party's favor.

On the CUTSA claim, we affirm the district court's grant of summary judgment to EA, although we rely on different grounds than did the district court. We hold that DT's contribution to the PlumbBob USB drive—that is, DT's design for the flash drive's removal from the PlumbBob object—does not "derive[] independent economic value, actual or potential, from not being generally known to the

public." Cal. Civ. Code § 3426.1(d)(1). Rejecting EA's cross-appeal, we further hold that the district court did not clearly err or otherwise abuse its discretion in denying attorneys' fees for this claim.

# I

The Sims is a popular video game in which players "create virtual people called 'Sims,' customize the homes and neighborhoods in which [the Sims] live, and help direct them in their relationships, careers, and social lives as they progress through various life stages." When a player controls a specific character, a green icon called a "PlumbBob" appears over the character's head.



This logo is "an iconic symbol of *The Sims*." EA holds a copyright in the PlumbBob icon.

For the release of The Sims 3, EA decided to order USB flash drives shaped like a PlumbBob as a promotional trinket to be sold with the game. In May 2008, EA turned to Lithomania, a print production company, to find a manufacturer for the PlumbBob flash drives. Lithomania president Gina Long contacted DT and sent pictures of the PlumbBob. DT was asked to produce prototype samples of a PlumbBob-shaped flash drive for EA's approval. EA approved DT's prototype, and the parties began negotiating over a Vendor Agreement in August 2008.

Less than two weeks later, Lithomania sent DT's prototype to TREK2000, a Chinese company, without telling DT.[1] TREK2000 offered to make identical PlumbBob USB drives for $0.50 less per unit. EA asked Lithomania whether TREK2000 "swear[s] they can match what we already had" from DT, and Lithomania assured EA that "they don't think they will have a problem matching it at all." In the end, the only difference between TREK2000's product and DT's prototype was that the corners were "a little less sharp than the corners of the prototype."

Rather than tell DT that it had been cut out of the deal, Lithomania lied, first telling DT that the project was on hold and "who knows???" why. Then, just one day after Lithomania told EA that it was "ready to start the preproduction sample [with TREK2000] as soon as you confirm an order for the manufacturing tool," Lithomania

---

[1] EA claims this was because of a disagreement over the use of certain flash drive technology, although DT disputes that explanation.

sent DT a vendor agreement stating that Lithomania would purchase the USB flash drives from DT. The agreement also purported to transfer all intellectual property rights from DT to EA. DT signed the agreement, thinking that it had sealed the deal. Lithomania, on the other hand, told EA that it had received a vendor agreement from DT, "so IP's are all protected." EA responded, "Great. . . . Protect us all."

For the next few weeks, Lithomania had DT sign other agreements and assignments of IP interests. DT was never actually told that it had lost the project. DT suspected its loss, but it did not know for sure until DT's owner and CEO saw the PlumbBob drive available in stores.

DT first sued Lithomania in California state court for fraud, breach of contract, and breach of the implied covenant of good faith and fair dealing. That suit settled.

DT then brought this case against EA, seeking a declaratory judgment that DT was "joint author of a copyrighted work" in the PlumbBob drive and was "entitled to an equal share of the profits related to the PlumbBob USB." The district court dismissed for failure to state a claim, holding that DT did not "sufficiently allege[] that it is a joint owner of the USB Drive" because it had signed a vendor agreement transferring all rights in the USB drive to EA. On appeal, we vacated and remanded, holding that DT could prevail "if the contract was fraudulently induced, such that it was invalid from the beginning." 525 F. App'x 560, 561 (9th Cir. 2013).

On remand, DT amended its complaint to add a claim for Trade Secret Misappropriation under the California Uniform Trade Secret Act (CUTSA), Cal. Civ. Code §§ 3426–3246.11.

EA moved for summary judgment on both claims.  On the copyright claim, EA argued: (1) that "DT did not contribute any independently copyrightable expression to the PlumbBob Drive"; (2) that even if DT did, it was not a joint author; and (3) that DT had assigned any copyright interest it had to Lithomania.  The district court granted summary judgment on the copyright claim, concluding that DT's contributions to the drive were either trivial or functional, and that even if not, DT was not a joint author.

On the trade secrets claim, the district court at first denied summary judgment, holding that a reasonable jury "could find that Plaintiff had done enough to protect the secrets of the samples" and that DT could prove misappropriation if EA "knew Lithomania had a duty to maintain the samples' secrecy or limit their use."  But after additional discovery, EA filed a renewed motion for summary judgment, which the district court granted, holding that there was "no reasonable dispute of material fact that DT did not take reasonable efforts to maintain the secrecy of its prototypes."   DT appealed both claims.

EA then moved for attorneys' fees on both claims under the respective statutes.  The district court denied fees for both claims.  The district court found that DT's copyright claim was not frivolous or unreasonable and that DT's motivations were not improper.  The court also found that DT's trade secrets claim was not objectively specious and that DT did not bring the claim in bad faith.  EA cross-appeals the denial of attorneys' fees on only the trade secrets claim.

## II

**The federal copyright claim**

Because EA holds a copyright in the original 2-D PlumbBob icon, the question at the heart of this claim is whether DT's 3-D rendition of the PlumbBob as a USB flash drive is entitled to copyright protection as a derivative work. *See* 17 U.S.C. § 101 (defining derivative work). If DT contributed material "distinguished from the preexisting material employed in the work," DT can claim a copyright in its contributions. 17 U.S.C. § 103(b). DT alleges that two aspects of its work make the PlumbBob-shaped drive original enough to warrant copyright protection: (1) the USB drive had 12 equal sides, whereas the icon had 20 unequal sides; and (2) DT designed the USB drive to fit into the PlumbBob with a "futuristic cut away look . . . at a unique angle."

We have established a two-step inquiry for determining whether a derivative work is original enough to receive copyright protection. First, courts address the question whether any aspects of the work seeking copyright protection "are purely functional, utilitarian or mechanical." *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1221 (9th Cir. 1997) (hereinafter *ERG*) (citing 17 U.S.C. § 101 (describing the limitations on copyrighting mechanical or utilitarian aspects of a work)). If so, "any differences in appearance between a derivative work and the preexisting work which are not conceptually separable from any utilitarian, functional or mechanical purposes" are set aside and excluded from the determination "whether sufficient artistic differences exist to constitute 'originality.'" *Id.* at 1222.

Second, when addressing originality, courts apply the two *Durham* factors from the Second Circuit:

> First, to support a copyright the original aspects of a derivative work must be more than trivial. Second, the original aspects of a derivative work must reflect the degree to which it relies on preexisting material and must not in any way affect the scope of any copyright protection in that preexisting material.

*Id.* at 1220 (quoting *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 909 (2d Cir. 1980)). "[T]he amount of creative input by the author required to meet the originality standard is low" but "not negligible." *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003); *see also Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1163 n.5 (9th Cir. 1977).

### A.  Functionality

In *ERG*, we discussed at length how the functionality standard applies to 3-D representations of 2-D objects. That case involved costumes derived from drawings of famous cartoon characters such as the Pillsbury Doughboy, Geoffrey the Giraffe, and Cap'n Crunch. When analyzing the differences between the costumes and the drawings, we concluded that differences in "form, texture and proportionality" were "necessitated by the fact that a human body must fit inside the costumes." 122 F.3d at 1223. Those differences were thus functional or utilitarian and had to be excluded from the originality analysis. On the contrary, we recognized that the facial expressions on the costumes were

a "truly 'artistic' difference" that was not merely functional. *Id.* We held that that non-functional artistic difference could be considered in our originality analysis.[2]

Here, DT alleges that it made a non-functional contribution to the USB drive by designing the flash drive to fit into the PlumbBob with a "futuristic cut away look . . . at a unique angle."



---

[2] For examples of other cases discussing functionality, see *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1146–47 (9th Cir. 2003) (holding that additions designed to turn a ceiling lamp into a table lamp were functional), and *Pickett v. Prince*, 207 F.3d 402, 405 (7th Cir. 2000) (Posner, C.J.) (stating that the differences between a guitar based on Prince's symbol and Prince's symbol may be "nothing more than the functional difference between a two-dimensional symbol and a guitar in the shape of that symbol," but also positing that perhaps "the juxtaposition of the symbol and the guitar is enough to confer on the ensemble sufficient originality" for copyright protection).

We hold that there is a genuine issue of material fact regarding whether the manner in which DT designed the USB flash drive stick to fit into the PlumbBob object was merely functional or utilitarian. *See Poe v. Missing Persons*, 745 F.2d 1238, 1242–43 (9th Cir. 1984) (explaining that functionality is a question of fact for a jury); *see also N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1034–35 (9th Cir. 1992) (explaining that originality is a question of fact for a jury).

Of course, the mere feature of having a USB flash drive that can be removed from the PlumbBob object is not copyrightable; that is a functional attribute "necessitated by the fact" that the 3-D PlumbBob was designed for use as a USB flash drive. *ERG*, 122 F.3d at 1223. But the "cut away" manner in which the flash drive is to be removed is potentially non-functional. DT claims that it designed this feature to have a "futuristic" appearance. The record shows that DT considered at least four other design options that had different aesthetic characteristics.






And the designer, Erik Jones, submitted a sworn declaration explaining that his ultimate choice was made "for aesthetic reasons." Like the court found with the costume faces in *ERG*, a jury could find that this design feature was "truly 'artistic.'" *Id.* There is a genuine issue of material fact whether the unique and creative manner in which DT designed the USB drive to fit into the PlumbBob was non-functional and could potentially qualify for copyright protection.

EA's arguments to the contrary do not persuade us. EA argues that the record contains evidence that the choice of design "*was* driven by functional considerations." EA cites testimony from a DT employee, Shaun Secours, who said that he talked with Jones and that Jones's decision was "just for the functionality of the drive, there's no other way we can make this come out. Otherwise, the portion that you are plugging into the computer will be too fat and you — it would interfere with cables and other USB slots and it wouldn't be — people wouldn't use it." But Secours was not the designer of the drive; Jones was, and as stated above, Jones declared that his design decisions were made for

aesthetic reasons.  This type of factual dispute supports our conclusion that this issue is inappropriate for resolution on summary judgment.  *See Doe v. Cutter Biological, Inc.*, 971 F.2d 375, 381 (9th Cir. 1992) (explaining that the existence of conflicting testimony on an issue "underscores the inappropriateness of a grant of summary judgment").  Secours's assertion that the final design reflected the only way to design the drive while maintaining its functionality is certainly debatable—at least two of the other options that Jones considered appear to have been able to function as a normal USB flash drive.  If Jones said one thing and Secour said another on the same subject, it is the role of the jury, not a court on summary judgment, to determine the facts.

In sum, it cannot properly be said as a matter of law that the manner in which DT designed the flash drive to emerge from the PlumbBob object was merely utilitarian or functional.  A reasonable jury could answer that question in either party's favor.[3]

## B.  Originality

As discussed above, when determining whether a derivative work is sufficiently original to warrant copyright protection, the pertinent question is whether "the difference between the [derivative] work and the preexisting work is non-trivial."  *N. Coast Indus.*, 972 F.2d at 1033.  In *North Coast Industries*, we held that the district court erred by concluding that a minor difference in the arrangement of

---

[3] Because we view the facts in the light most favorable to the non-moving party when analyzing whether summary judgment is appropriate, we will consider this design feature when discussing the originality of the PlumbBob drive.

rectangular shapes on two different clothing patterns was trivial as a matter of law; the question of triviality should have been sent to a jury. *Id.* at 1034–35. To the contrary, our opinion in *ERG* held that the differences in facial expressions between cartoons and their derivative costumes were trivial as a matter of law because "no reasonable trier of fact would see anything but the underlying copyrighted character when looking at ERG's costumes." 122 F.3d at 1223. We distinguished *North Coast Industries* by explaining that the different geometric shapes on the clothes in that case were "so crucial to the derivative work" that "a reasonable trier of fact [c]ould find the derivative works to be recognizably the derivative creator's own product." *Id.* at 1224.

Turning to the facts of this case, we reject DT's first argument that its PlumbBob drive merits copyright protection because it has 12 rather than 20 sides. While some images of the PlumbBob have 20 unequal sides, others have only 12. The PlumbBob has apparently evolved throughout multiple editions of The Sims—also including, for instance, changes in whether the icon is translucent or solid. Even assuming that DT's version has a slightly different shape than the drawing presented by EA, we have held that a character's copyright encompasses its "distinctive character traits and attributes, even if the character does not maintain the same physical appearance in every context." *DC Comics v. Towle*, 802 F.3d 1012, 1020 (9th Cir. 2015). The number of sides on DT's USB flash drive is not a copyrightable contribution in this case.

On the other hand, if a jury determines that the manner in which DT designed the USB drive to fit into the PlumbBob object is artistic and non-functional, *see* Sec. II.A & n.3, *supra*, we hold that there is a genuine issue of material fact as

to whether DT's USB drive is sufficiently original to warrant copyright protection. That aesthetic feature is "something recognizably the artist's own," and a reasonable jury could determine that it meets the "low" standard for originality. *Satava*, 323 F.3d at 810; *see also N. Coast Indus.*, 972 F.2d at 1034–35.

EA argues that the district court correctly determined that DT failed the second prong of the *Durham* test that "derivative works are not copyrightable if they 'affect the scope of any copyright protection in th[e] preexisting material.'" *ERG*, 122 F.3d at 1224 (quoting *Durham*, 630 F.2d at 909). EA parrots the district court in saying that DT's design was "so similar to the well known and copyrighted PlumbBob [it's] based on" that if it were copyrightable, DT would have "a monopoly on all USB[ drives] shaped like the PlumbBob, and perhaps even any other 3-D embodiment of the PlumbBob." That statement is incorrect. As a derivative copyright holder, DT would only have a copyright in its unique contribution—the artistic manner in which it designed the USB flash drive to fit into the PlumbBob object. *See* 17 U.S.C. § 103(b). Anyone else would be free to create a USB flash drive that used a different method or design for flash-drive removal, and DT's copyright would obviously not preclude others from making a 3-D PlumbBob without a flash drive.

We conclude that the question of originality warrants decision by a jury.

## C.  Joint authorship

In the alternative, EA argues that even if the differences between the 2-D and 3-D PlumbBobs were not trivial, DT

was not a joint author as required by the Copyright Act. The district court adopted this argument as an alternative basis for granting summary judgment.

We have set forth three criteria to determine authorship for copyright purposes, of which the most important factor is who is "exercising control": that is, who is "'the inventive or master mind' who 'creates, or gives effect to the idea.'" *Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000) (quoting *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 61 (1884)). EA argues that it "had ultimate control and final decision-making authority over the design of the PlumbBob Drives," dictating shape, color, "and all other material particulars." While the record suggests that Long at some point requested that the USB drive be a flat stick removable from the top of the Drive rather than have the Drive split in the center to reveal the USB, such evidence, viewed in the light most favorable to DT, does not prove that EA held ultimate control over the drive's design. A reasonable factfinder could find that EA was merely in a position to offer suggestions, but did not ultimately "give[] effect to the idea" of how the USB flash drive fit into the PlumbBob object. *Aalmuhammed*, 202 F.3d at 1234 (quoting *Burrow-Giles*, 111 U.S. at 61).

EA also argues that the "audience appeal" of the PlumbBob drive did not derive from DT's contributions to the shape of the design port. *See id.* (listing audience appeal as a factor to consider in determining joint authorship). But a reasonable factfinder could conclude that the drive design DT ultimately adopted was more aesthetically pleasing than the designs it rejected, suggesting that DT's contribution helped entice consumers to purchase the Collector's Edition of the game.

We hold that there is a genuine issue of material fact as to whether DT was sufficiently in control of its artistic contribution to qualify as a joint author in the resulting USB drive prototype.  Again, this issue warrants decision by a jury.

## D.  The assignment contract

EA argues finally that DT's copyright claim fails because DT assigned away its copyright interest in the PlumbBob drives in the vendor agreement it signed with Lithomania. The district court did not address this claim, but we consider it because we may affirm on any basis apparent in the record. *Hell's Angels Motorcycle Corp. v. McKinley*, 360 F.3d 930, 933 (9th Cir. 2004).

DT claims that fraud in the inducement invalidates this vendor agreement, but EA draws a distinction between fraud in the inducement and fraud in the execution.  EA states, "even if DT had been fraudulently induced to enter into the Vendor and Confidentiality and Anti-Piracy Agreements, those agreements would still bar DT's claim."  This argument is barred by law of the case.  In our prior memorandum disposition, we reasoned that "if the contract was fraudulently induced, such that it was invalid from the beginning, there would be no valid contract for EA to enforce."  525 F. App'x at 561.  That statement in our prior decision forecloses EA's argument here.

To reiterate the facts that led to this contract:  Lithomania knew it was going to be sending DT's prototype to a Chinese company for manufacturing, but rather than disclose that to DT, it sent DT a vendor agreement stating that Lithomania would purchase the USB drives from DT while asking DT to sign over its intellectual property rights.  Lithomania then

bragged to EA that it had secured this contract, stating that "IP's are all protected," to which EA responded "Great. . . . Protect us all." As we stated in the prior appeal, "[b]ecause DT may be able to prove that the contract is unenforceable, this case is inappropriate for dismissal." *Id.* at 561–62. Nothing has changed materially since then. The vendor agreements are not a proper basis for summary judgment.

For these reasons, we reverse the district court's grant of summary judgment on the copyright claim.

## III

### The California trade secret claim

In California, the tort of misappropriation of a trade secret is governed by statute. A trade secret is defined as

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d). The district court ruled that no reasonable jury could find that DT took reasonable efforts to

maintain the secrecy of its prototype.  As we explain below, we decline to affirm on that basis.

To be sure, the record shows that DT did not do much, if anything, to explicitly protect its prototype design.  EA points to substantial evidence that DT "placed no limitations on what could be done with the prototypes that DT sold to Lithomania," and EA stresses that DT did not label the prototypes as confidential "or otherwise communicate to Lithomania that it regarded them as such."  DT does not contest this evidence, but the thrust of DT's claim is that it reasonably relied on implicit business expectations that Lithomania would keep the prototype secret—that is, expectations that Lithomania would not send the prototype to a Chinese competitor to manufacture effectively the same product at a lower price.  As we explained in *Pachmayr Gun Works, Inc. v. Olin Mathieson Chem. Corp.*, 502 F.2d 802 (9th Cir. 1974), "courts will consider the factual circumstances of each case on an individual basis, to determine whether a confidential relationship may reasonably be implied" such that an entity has the duty to maintain the secrecy of confidential information.  *Id.* at 808.  We quoted the Seventh Circuit for the proposition that

> Where the *facts* show that a disclosure is made in order to further a particular relationship, a relationship of confidence may be implied, e.g., disclosure to a prospective purchaser to enable him to appraise the value of the secret, disclosure to a prospective lender to assure him of the prospects of a borrower's business, disclosure to agent, partner, or joint adventurer.

*Id.* (quoting *Cloud v. Standard Packaging Corp.*, 376 F.2d 384, 388–89 (7th Cir. 1967)).

EA contends that this common law theory of trade secret misappropriation has been preempted by California's trade secret statute, which was passed after *Pachmayr* was decided. EA claims that the statute requires plaintiffs "to prove as an essential element of a CUTSA claim that it made affirmative efforts to maintain the secrecy of its purported trade secret."

That is not, however, the language of the statute. The statute instead requires "efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d)(2). It may be that in some factual circumstances, a rational jury could find that when an implied relationship of confidentiality exists between two business partners,[4] it is "reasonable under the circumstances" for the prospective seller to not make additional efforts to maintain secrecy of the prototype. But because we can affirm on an alternate ground, *see Hell's Angels*, 360 F.3d at 933, we decline to address whether the CUTSA statute preempts *Pachmayr*, and we assume without deciding that DT raised a genuine issue of material fact as to whether it had such an implied confidential relationship with Lithomania.[5]

---

[4] For instance, "disclosure to a prospective purchaser to enable him to appraise the value of the secret." *Pachmayr*, 502 F.2d at 808 (quoting *Cloud*, 376 F.2d at 389).

[5] EA also argues that *Pachmayr* is "inapposite" because it concerned "unfair competition or breach of confidence," but the claim very clearly was for "Unfair Competition – Misappropriation of Trade Secret." 502 F.2d at 807.

We instead affirm the district court's grant of summary judgment on alternate grounds. CUTSA defines trade secrets as having "independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use." Cal. Civ. Code § 3426.1(d)(1); *see Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*, 171 Cal. Rptr. 3d 714, 743 (Ct. App. 2014) ("[T]he information alleged to be a trade secret" must be "'valuable because it is unknown to others.'") (quoting *DVD Copy Control Ass'n Inc. v. Bunner*, 10 Cal. Rptr. 3d 185, 192 (Ct. App. 2004)). EA argues that DT's design is not a trade secret because it has no "actual or even potential value to DT outside of a single ephemeral project for a single customer." DT has not presented any evidence that there was value in the secrecy of its design. We affirm the district court's grant of summary judgment on this ground.

**Attorneys' fees**

EA argues that it is entitled to attorneys' fees on DT's trade secrets claim under Cal. Civ. Code § 3426.4, which authorizes attorneys' fees when "a claim of misappropriation is made in bad faith." California courts have held that bad faith "requires objective speciousness of the plaintiff's claim, as opposed to frivolousness, and its subjective bad faith in bringing or maintaining the claim." *Gemini Aluminum Corp v. Cal. Custom Shapes, Inc.*, 116 Cal. Rptr. 2d 358, 368 (Ct. App. 2002). A "specious" action "may superficially appear to have merit," *id*., so attorneys' fees may be proper even if the claim is not frivolous.

The district court held that DT's claim was not objectively specious and found that DT did not bring the

claim in bad faith, explaining that "Plaintiff had reason to believe its action against Defendants was valid." The district court did not clearly err or abuse its discretion in drawing these conclusions. Even assuming that bad faith includes recklessness (which the parties dispute), there is no evidence to suggest that DT brought the claim for an improper purpose such as to extort a settlement. The allegations here are consistent with the normal scope of vigorous advocacy, and these are not the type of specious claims that could justify an attorneys' fee award under California law. The district court did not clearly err or otherwise abuse its discretion in denying EA an attorneys' fee award.

## IV

We reverse the district court's grant of summary judgment on the copyright claim and remand for further proceedings consistent with this opinion. We affirm the district court's grant of summary judgment on the trade secret claim and we affirm the denial of attorneys' fees.

**AFFIRMED IN PART, REVERSED IN PART, REMANDED.** Each party shall bear its own costs on appeal. *See* Fed. R. App. P. 39(a)(4).